IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:11-CR-42 |
| KALEB CARL MASTERS, | Hon. Michael S. Nachmanoff |
| *Defendant*. | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S OMNIBUS
MOTION REGARDING SUPERVISED RELEASE [DKT. 72]**

COMES NOW, the United States of America, by and through undersigned counsel, and

hereby submits its Response in Opposition to the Omnibus Motion Regarding Supervised

Release filed by defendant Kaleb Carl Masters.

On January 26, 2011, the defendant was convicted on one count of attempted possession

of child pornography. He was sentenced to 24 months in prison followed by a 10-year term of

supervised release, which he began serving on February 25, 2013. The defendant's adjustment

to supervision was not without difficulty, to say the least. In 2016, the Court imposed additional

conditions, including home detention with GPS monitoring, after the defendant "engaged in

deviant sexual behavior involving two minor children who resided near his residence." Dkt. 59 at

4. In 2017, the Court endorsed a "No Action" Petition after the defendant used his computer to

view sexually explicit material and masturbated to pictures of minor girls he found on the

Internet. Then, on August 9, 2019, the defendant was found in violation of his supervised release

for violations he committed both on the computer and directly with children. Specifically, after

he became aroused by a prepubescent child, the defendant followed the child around a grocery

store. He also had inappropriate contact with children at his Church, including when he got

1

physically close to a child after he saw her underwear and later masturbated to her pictures.  He also purchased magazines with "arousing images of little girls" and watched movies and TV shows depicting minors in order to become sexually aroused.  The Court sentenced the defendant to 14 days in custody and imposed a new 10-year term of supervised release with the conditions that had been previously imposed.

In his instant motion, the defendant asks this Court to terminate his supervised release, or in the alternative to (1) remove all restrictions on visitation with his son; (2) exempt from restrictions all activities involving the defendant's girlfriend and activities through his Church; (3) exempt from restrictions the defendant's pursuit of employment or the starting of his own business; and (4) modify restrictions on the defendant's travel to allow him to travel to see family without limitation or need for prior approval.  For the reasons set forth below, the Court should deny the defendant's motion for early termination of his supervised release and should further deny his request for modification of the conditions of his supervised release.

## I.       Background

### A.  The defendant searched for, downloaded, and viewed child pornography.

According to the Statement of Facts, on July 27, 2007, the Naval Criminal Investigative Service ("NCIS") began an investigation involving the possible possession of child pornography. The investigation started after the Marine Corps Network Operations and Security Command, Computer Emergency Response Team determined that an individual had accessed the website "childporno.us" from a computer connected to the Navy Marine Corps Internet.  An initial examination of the computer's hard drive uncovered at least six images depicting the sexual abuse of previously-identified minor victims as well as hundreds of pages of Internet searches using terms like "Lolita" and "Underage Porn" conducted by the defendant.

2

In May 2009, the defendant was interviewed and admitted to NCIS agents that he had possessed and viewed child pornography online, including on his work computer. The defendant told the agents that he knew it was illegal and the potential consequences that could result.

Forensic analysis of the defendant's work and personal computers revealed that he possessed hundreds of images depicting the sexual abuse of children as young as toddlers, including over one hundred images depicting the sexual abuse of known, previously identified minors. The defendant had used search terms such as "Lolita," "underage porn," "preteen," "pedo," and "little nymphets" to obtain the prepubescent child pornography. Furthermore, websites identified in pictures recovered from the defendant's computers included: "Illegal.cp," "The Sick Child Room," "Child Porno," "CP Real," "Kinder Surprise," "Pedo Love," "Elite Child Porn," "Dark Home Pussy," and, "Extreme Pedo."

On January 26, 2011, the defendant pleaded guilty to a one-count criminal information charging him with attempting to possess and access with intent to view child pornography between July 2006 and February 2009, in violation of 18 U.S.C. § 2252A(a)(5)(B). Dkt. 19 (Plea Agreement). The defendant was sentenced to a term of incarceration of 24 months followed by 10 years of supervised release. Dkt. 30 (Judgment). The defendant's term of supervised release included the standard conditions of supervision, as well as a number of special conditions that required, among other things, that he not possess a computer or use one to access the Internet without prior approval; not have access to or possess any pornography or any magazines using young juvenile models or pictures of minors; and have no contact with minors unless supervised by a competent adult approved by the U.S. Probation Office (USPO).

**B. The defendant admitted he had been watching and following young girls at coffee shops while on supervision.**

According to a Petition submitted by the USPO in 2016, it was discovered during a polygraph that the defendant had been watching and following young girls while at coffee shops. Dkt. 33 at 4. The defendant admitted that he had been aroused on several occasions when he observed young girls, ages 2 to 16, in public, and had followed at least one girl when she walked outside of a Starbucks. *Id*. The defendant also admitted that he was aroused by baby diapers and at times had gone to the store and walked down the diaper aisle just to be close to them. *Id*. The defendant's sex offender treatment provider raised concerns about the defendant's failure to use appropriate coping techniques to minimize the risk of him stalking minor girls. *Id*. He also expressed concerns about the defendant living with his wife and soon-to-be-born son. *Id*. As a result, the USPO recommended in the Petition that the defendant be prohibited from having any contact with his child until his therapist determined he did not pose a risk to children. *Id*.

At an August 4, 2016 hearing, the Court modified the defendant's supervised release to include that he: (1) be placed on home detention with GPS monitoring and timeouts as directed by the USPO; (2) not loiter or frequent any locations where children may be present, including pools, parks, playgrounds, or establishments where child entertainment is available; (3) notify his neighbors, through USPO, of his behavior and risk; and (4) not have contact with his child outside the presence of an approved supervisor. Dkt. 39.

At a subsequent status conference in April 2017, the United States recommended that the defendant remain on his conditions of supervision based on the reports of the USPO and his sex offender treatment therapist. Dkt. 45. The Court then ordered that the defendant refrain from having any contact with his minor child and that all other conditions of the defendant's supervised release remain in effect. Dkt. 46.

4

**C. The defendant used his computer to view sexually explicit material and masturbated to pictures of minor girls on the Internet.**

In August 2017, USPO became aware that the defendant was using his computer to view sexually explicit material and to masturbate to images of minor girls he found on the Internet. Dkt. 59 at 4. The Probation Officer did not discover any child pornography on the defendant's computer. *Id.* And the defendant agreed to give the device to his wife until he had an opportunity to address his high-risk behavior through therapy. *Id.* The Court endorsed a No Action Petition. *Id.*

On June 12, 2018, the defendant filed an unopposed motion to modify the conditions of his supervision to allow him to possess a pre-approved, fully-clothed photograph of his minor son (Dkt. 54), which the Court granted (Dkt. 55). Then, on December 20, 2018, the defendant filed another unopposed motion to modify the conditions of his supervision, this time requesting that the conditions requiring that he submit to GPS monitoring and have no unsupervised contact with his son be modified to allow him to have supervised visits with his son over the holidays in compliance with a visitation plan approved by the USPO. Dkt. 57. The Court granted this motion as well. Dkt. 58.

**D. The defendant got close to a prepubescent girl at Church and masturbated to pictures of her.**

On July 31, 2019, USPO submitted a Petition alleging the defendant had again violated the conditions of his supervised release by engaging in deviant behavior and placing himself and the community at risk. Dkt. 59 at 4. Specifically, the Petition alleged that in June 2019, the defendant became sexually aroused after seeing a prepubescent child shopping for groceries with her family and he proceeded to follow the child around the store. *Id.* at 5. The defendant also reported that he held hands with several minors during church services and, on June 30, 2019,

positioned himself closely to a prepubescent girl during church services after seeing her underwear. *Id*. The defendant then twice masturbated to images of this girl later that day. *Id.*

The defendant also admitted to his sex offender treatment therapist during a polygraph examination that he had purchased a magazine from a grocery store containing "arousing images of little girls" and later purchased several additional magazines. *Id.* The defendant likewise admitted to viewing movies and television shows depicting minors in order to become sexually aroused. *Id.*

Based on the above, the Court issued a warrant for the defendant's arrest. On August 9, 2019, the defendant admitted the violations and the Court found him in violation of his supervised release. Dkt. 67 (Minute Entry), 69 (Amended Order). The Court sentenced the defendant to 14 days in prison, revoked his supervised release and imposed a new 10-year term of supervised release. Dkt. 69 at 2. The new term of supervised release contained the same conditions previously imposed in addition to three modified or added conditions, including: (1) the defendant satisfactorily participate in, and complete, mental health counseling as directed by USPO; (2) the defendant wear GPS or location monitoring equipment for a period determined by USPO; and (3) the defendant notify USPO of any unapproved contact with minors within 24 hours. *Id*.

In May 2024, the Court granted the defendant's request to possess three pre-approved photos of his minor child. Dkt. 71. The Court ordered that all other terms and conditions of his supervision were unchanged. *Id*.

## II.    Legal Standard

In his instant motion, the defendant asks this Court for early termination of his current term of supervision, or in the alternative to modify certain conditions. Under 18 U.S.C. §

3583(e)(1), a court may, after considering the factors set forth in 18 U.S.C. § 3553(a), "terminate a term of supervised release ... at any time after the expiration of one year of supervised release ... if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice." As at sentencing, courts consider several factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to afford adequate deterrence, the need to protect the public from further crimes of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a).

Courts have discretion whether to grant early termination of supervised release, even when the conditions for termination are met. *Folks v. United States*, 733 F. Supp. 2d 649, 651 (M.D.N.C. 2010). While the Court should consider the 3553(a) factors, the inquiry is broader than the individual's conduct. *Id.* (citing *United States v. Pregent*, 190 F.3d 279, 282–83 (4th Cir. 1999) (noting that the phrase "and the interest of justice" gives the court latitude to consider factors other than the individual's behavior)). "Circumstances that justify early discharge have included exceptionally good behavior that makes the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve' general punishment goals." *Id.* (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

Neither the passage of time nor full compliance with the terms of supervised release are sufficient bases to warrant early termination. *Id.* at 651–52. Indeed, if full compliance was a sufficient reason to terminate supervised release, "the exception would swallow the rule." *Id.* at 652; *accord United States v. McKay,* 352 F.Supp.2d 359, 361 (E.D.N.Y. 2005) ("Model prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination.");

7

*United States v. Medina,* 17 F.Supp.2d 245, 247 (S.D.N.Y.1998) (noting that "[w]hile [defendant's] post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule"); *United States v. Weintraub,* 371 F.Supp.2d 164, 167 (D.Conn.2005) (noting that "[a]lthough [the defendant's] ongoing and full compliance with all conditions of supervised release, including payment of the fine and restitution, is commendable, in the end that is what is required to all criminal defendants and is not a basis for early termination of his supervised release"); *United States v. Caruso,* 241 F.Supp.2d 466, 469 (D.N.J.2003) (ruling that "mere compliance with the terms of probation or supervised release is what is expected of probationers, and without more, is insufficient to justify early termination"); *United States v. Hardesty,* 2002 WL 731705 (D.Kan. Apr. 2, 2002) (rejecting arguments that defendant is "fully rehabilitated" and complied in all respects with post-release requirements and that continued release would serve "no meaningful and useful purpose").

"Termination 'ends the term of supervised release without the possibility of its reimposition or continuation at a later time.' " *United States v. Harris*, 878 F.3d 111, 115 (4th Cir. 2017) (quoting *Johnson v. United States*, 529 U.S. 694, 704 (2000)). "Thus, if the district court later discovered that the defendant had earlier violated some condition of his supervised release, the court would lack authority to send him back to prison for that violation *qua* violation." *Id.* (quoting *United States v. Cross*, 846 F.3d 188, 190 (6th Cir. 2017)).

## III.    Argument

### A.  Neither the conduct of the defendant nor the interest of justice warrants early termination of the defendant's supervised release.

The defendant's underlying offense conduct and past violations of supervised release weigh heavily against early termination.  The defendant was convicted of a crime of violence

involving the sexual exploitation of children. *See* 18 U.S.C. § 3156(a)(4)(C). For at least three years, he searched for, downloaded, viewed, and collected child sexual abuse material (CSAM), including depictions of children as young as toddlers. Dkt. 17 (Information); Dkt. 20 at 4. He did this at work and at home using multiple computers to access and store the material. *Id*. The nature and circumstances of the defendant's offense weighs against terminating his supervised release early.

Critically, the defendant has a history of violations of his supervision. Although his most recent violations occurred in 2019, they were extremely serious and involved direct contact with minor children and stalking minors in public. The defendant is sexually attracted to children and admitted in the past that he struggled with a diaper fetish and is aroused by young girls. Dkt. 33 at 4. He acted on those impulses—repeatedly—when he stalked girls at coffee shops, followed a prepubescent child at a grocery store, got physically close to another prepubescent girl at Church and masturbated to her pictures, and held hands with other minors during prayer. Dkt. 59 at 5. He also repeatedly violated conditions related to pornography when he purchased magazines containing "arousing images of little girls" and watched movies and TV shows depicting minors for "sexual arousal." *Id*.

While the government does not dispute that the defendant appears to have been in compliance with the conditions of his supervised release since his 2019 violation, it still has serious concerns about risk to the community if the defendant is released from supervision. The need to protect the public from potential recidivism strongly counsels against terminating the defendant's supervision. The close supervision by his Probation Officer and the conditions of his release have likely contributed to the defendant's success since 2019. As a result, the

government submits that continued supervision will also afford additional deterrence to criminal conduct.

The defendant argues that he has made incredible personal progress, including weaning off a medication that decreases sexual desires, such that supervision is no longer required. Dkt. 72 at 4-5. Upon information and belief, the medication to which the defendant refers is Lupron, which he has stopped taking against medical advice. The defendant has not submitted any documentation showing that he weaned off this medication in consultation with his treatment providers. And, if true that he ceased the medication against medical advice, this fact raises serious concerns about terminating or modifying any of the defendant's release conditions.

The defendant's reliance on *United States v. Hamilton*, 1:17-CR-89-PTG, is misplaced. In that case, Hamilton's 5-year term of supervised release was terminated just 4 months early. *See* Dkt. 91 (Order). And her only violations on supervised release consisted of two instances of marijuana use. Dkt. 90 at 2 (Motion for Early Termination). Here, the defendant's violations were persistent for several years and put the community—namely, children—at risk of harm. The cases are not comparable. And while the defendant emphasizes that he has "tak[en] accountability" for his actions (Dkt. 72 at 9), taking accountability does not absolve him of the conduct or wipe away the record of his history on supervision.

The defendant has not set forth any compelling reasons for early termination of his supervised release. He argues that early termination is warranted "because he has made incredible progress in treatment" and that upon termination, he will "take steps to further reconnect with his son, build a stronger relationship with his girlfriend, and open his own contracting business." Dkt. 72 at 7. Setting aside issues related to his child, the defendant does not articulate how being under this Court's supervision meaningfully hinders his goals. Thus, his

10

request appears to be premised entirely upon his full compliance with the terms of his supervised release, post 2019. Yet, full compliance, which is the obligation and expectation for every supervisee, is not a basis (at least not by itself) for early termination, and it does not necessarily show that additional supervision is unnecessary or not beneficial. In this case, continued supervision is necessary to ensure the defendant refrains from engaging in any new offense cycles.

Terminating the defendant's supervision now would allow the defendant unrestricted and/or unsupervised access to his 9-year-old son. The defendant has not said if his ex-wife would support such a modification, but in any case, it would be inappropriate and potentially dangerous. The Probation Officer is in the best position to judge who is a suitable supervisor to ensure the child's safety during an approved visit. USPO's judgment should not be supplanted by that of the defendant.

Notably, the defendant does not dispute that he can and does see his child. Dkt. 72 at 18 ("probation's permission is not the factor that determines whether Mr. Masters can see his child. . ."). Rather, he asserts that scheduling supervised visits is difficult and he does not get quality alone time with his son. *Id*. What the defendant does not say in his motion is that restrictions related to his child were, in part, borne out of his diaper fetish and his lack of impulse control. *See* Dkt. 33 at 4 ("The major concern is how Mr. Masters will be affected when faced with the task of changing his child's diaper."); *id.* ("Mr. Masters has failed to use his avoidance and escape techniques. He has also failed to reduce the risk level of watching and following females or his diaper fetish by not being able to recognize his triggers for such deviant behaviors."). It is not the case that the defendant is prevented from seeing his child, only that reasonable and

11

necessary conditions of his supervision require that the visits be appropriately supervised and approved by USPO.

For these reasons, the Court should deny the defendant's motion for early termination of his supervision.

**B. The defendant's proposed modifications to his supervision are inappropriate and non-specific and thus should be denied.**

Should the Court deny the defendant's motion for early termination of his supervised release, the defendant asks the Court to authorize the following modifications:

(1) Remove all restrictions on visitation with his son, subject to coordination between the defendant's ex-wife and himself on the timing and nature of visits, or to allow for more frequent visits;

(2) Exempt from restrictions all activities involving the defendant's girlfriend and activities through his Church;

(3) Exempt from restrictions the defendant's pursuit of employment or the starting of his own business; and

(4) Modify restrictions on the defendant's travel to allow him to travel to see family without limitation or need for prior approval.

The Court should deny his motion.

*1. Restrictions related to the defendant's son.*

As stated above, there are serious safety concerns related to the defendant's contact with his son. The defendant has a sexual interest in children and a demonstrated history of impulse control problems as it pertains to them. The Court should deny this modification to the condition that the defendant's contact with minors be approved by Probation, particularly where the defendant has not even proffered the position of his ex-wife on this proposal. But regardless of

her position, USPO should continue to evaluate and determine who is an appropriate supervisor for the defendant's visits with his son.

### 2. Restrictions related to the defendant's girlfriend and Church.

This modification is impermissibly broad and unworkable. For example, adopting this modification could mean that the defendant would be permitted to have unrestricted contact with minors, computers, and pornography if those things coincide with either his girlfriend or his Church. Notably, the defendant previously violated his supervision—multiple times—at Church, including by getting physically close to a child to whose pictures he later masturbated, and holding hands with preteens and teens. Additionally, the defendant has not indicated why this modification is necessary, or which of his current conditions prohibits him from "activities involving Catherine" and "activities through his Church." Dkt. 72 at 20. Thus, the Court should deny the request.

### 3. Restrictions related to employment.

Likewise, this proposed modification is impermissibly broad, and the defendant has not identified any existing condition that precludes him from pursuing employment or starting his own business. In fact, he states in his motion that he has maintained steady employment on supervision. *Id.* at 10. Thus, the proposed modified condition should be denied.

### 4. Restrictions related to travel to see family.

This modification should be rejected as it does not suitably protect the public. The defendant indicated that he has a brother with minor children. The defendant should be required to make the necessary notifications and obtain any required approval before traveling, especially considering that he may come into contact with children during his travel. Furthermore, a key component of supervision is knowing where the supervisee is located and ensuring that location

is appropriate based on the person's history and triggers.  And as with the above proposed modifications, the defendant has not indicated how conditions related to his travel hinder him or prevent him from seeing family.  Thus, this modification should also be denied.

## IV.     Conclusion

For the reasons stated above, the United States respectfully asks this Court to deny the defendant's Omnibus Motion Regarding Supervised Release.

Respectfully submitted,

Lindsey Halligan
United States Attorney and
Special Attorney

Todd W. Blanche
Deputy Attorney General

Robert K. McBride
First Assistant United States Attorney

By:        _____/s/_____
           Lauren Halper
           Assistant United States Attorney
           United States Attorney's Office
           2100 Jamieson Avenue
           Alexandria, VA 22314
           Telephone: 703-299-3700
           Lauren.Halper@usdoj.gov